UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW HANGO, | ) | CASE NO. 1:19-cv-606 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| REBECCA ADDUCCI, Field Director, | ) | |
| Detroit Field Office, Immigration and | ) | |
| Customs Enforcement, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the report and recommendation ("R&R") of Magistrate Judge Jonathan D. Greenberg, recommending that the Court grant the amended motion of petitioner Andrew Hango ("petitioner" or "Hango") for a preliminary injunction and dismiss Hango's petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 42 [R&R].) Respondent Rebecca Adducci ("respondent") has filed timely objections to the portion of the R&R recommending Hango's immediate release. (Doc. No. 45 ["Obj."].) Hango did not file timely objections to any part of the R&R but filed a response to the government's objections on June 15, 2020. (Doc. No. 50 ["Res."].)

In accordance with 28 U.S.C. § 636(b)(1) and *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001), this Court has made a *de novo* determination of the magistrate judge's R&R. For the reasons stated below, the Court sustains respondent's objections in part, accepts the R&R in part and rejects the R&R in part, denies Hango's motion for preliminary injunctive relief, as amended, and dismisses the habeas petition.

I. **BACKGROUND**

For purposes of framing the present objections, it is sufficient to note that the federal government has been attempting to remove Hango, a citizen of Tanzania, since 2002. As is evident from the R&R's recitation of the facts surrounding the underlying immigration proceedings, Hango has resisted removal on many fronts. His efforts have included filing meritless and repetitious motions and requests to reopen proceedings in the immigration court and other forums, refusing to voluntarily deport when ordered to do so, and most recently, physically refusing to board a plane on which U.S. Immigration and Customs Enforcement ("ICE") had booked his passage.[1] (*See* R&R at 526–28[2].) Hango was taken into custody on March 6, 2019 by ICE for purposes of deportation.[3] He is currently detained by ICE at the Seneca County Jail in Tiffin, Ohio, pursuant to 8 U.S.C. § 1231(a)(6).

On March 19, 2019, Hango filed the present habeas petition, pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) In his petition, he maintains that he has been taken into custody by ICE without any cause or due process. (*Id*. at 1.) Specifically, he claims that his present detention is unlawful because he was previously released from detention on a valid order of supervision in

---

[1] In addition to responding to respondent's objections, Hango's June 15, 2020 filing purports to offer, in the first instance, objections to the R&R. In particular, Hango takes issues with the R&R's factual determination that he obstructed the government's efforts to remove him by refusing to board a plane, refusing to file an application for travel documents, and failing to self-report. (Res. at 607-08, 615-17.) These objections are untimely and are not properly before the Court. *See* 28 U.S.C. § 636(b)(1)(C); Advisory Committee Notes to Fed. R. Civ. P. 72 (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation) (citing cases). And while Hango attempted to reserve his right to file objections at a later date, neither § 636 nor Rule 72 allows for such a maneuver, and Hango did not ask for—and the Court did not grant—an extension of time for filing objections. But even if the Court considered the untimely objections on the merits, they would not be sustained, as the record does not support Hango's bald assertions that he did not engage in obstructionist behavior. (*See* Doc. No. 36-1 (April 17, 2020 Declaration of Aaron Husband); Doc. No. 36-1 (Notice of Failure to Comply) at 291.) The Court accepts the background facts as written in the R&R.

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

[3] This detention represents the second time Hango has been taken into custody for the purposes of facilitating deportation. Hango was previously released from federal custody in 2006.

2006. (*Id*. at 1–2, 9.) On February 21, 2020, Hango filed a motion for a preliminary injunction seeking release pending resolution of his underlying petition, or, alternatively, for expedited consideration of his petition. (Doc. No. 32.)

On April 9, 2020, he filed a document styled "Supplementary Arguments in Support of Motion for Preliminary Injunction Directing Release from Custody in Light of [the Coronavirus or COVID-19]." (Doc. No. 35.) In this amended filing, Hango raises, for the first time, his concerns that his "history of serious medical conditions which include[s] cerebrovascular disease (commonly known as stroke, 2017), atrial fibrillation, dyslipidemia, previous myocardial infarction (approximately 2016), and hypertension[,]" have put him at an increased risk of suffering serious illness should he contract the coronavirus. (Doc. No. 35 at 236.)

On May 21, 2020, the magistrate judge issued his R&R recommending that the Court dismiss the habeas petition and order Hango's immediate release from ICE custody. With respect to the underlying petition, the magistrate judge found that ICE's decision to take Hango into custody "when the removal was imminent is reasonable given that Hango had previously been given the opportunity to self-deport, and had not complied with that order." (R&R at 551.) The magistrate judge also rejected Hango's argument that his current detention was "presumptively unconstitutional" because he had already been detained for a prolonged period of time, noting that "[w]here, as here, a detainee takes proactive measures to defeat a timely deportation, those actions provide a valid basis to extend detention beyond the initial 90-day removal period." (*Id*. at 551-52, citing 8 U.S.C. § 1231(a)(1)(C).)

Notwithstanding his finding that the underlying petition lacked merit, the magistrate judge recommended that the Court release Hango due to the circumstances surrounding the

COVID-19 pandemic. Citing generally the challenges of containing a highly infectious disease like COVID-19 in the custodial setting, and relying on the existence of outbreaks at other facilities, the magistrate judge found that "Hango's continued confinement [in the] Seneca County Jail exposes him to a substantial risk of contracting COVID-19, which, due to his specific underlying health conditions [in turn], exposes him to a substantial risk of irreparable harm to his health and life." (*Id*. at 542.) Though acknowledging respondent's and the public's interest in enforcing immigration laws and Hango's past efforts to frustrates those laws, the magistrate judge concluded that Hango was not a flight risk because he had never "attempted to flee, even after he was released from an earlier civil detention in 2006." (*Id.* at 545.) The magistrate judge further observed that it may not even be possible to deport Hango at this time, given the restrictions on travel imposed by the global pandemic. (*Id*. at 546.)[4]

The R&R provided that "[a]ny objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation." (R&R at 554.) Allowing for time for submission through the U.S. Mail, any objections to the R&R were due no later than June 8, 2020.

The magistrate judge further ordered Hango to file "declarations under oath laying out a concrete proposal for release under reasonable conditions, including at a minimum his plans for

---

[4] With respect to respondent's argument that Hango's motion for release could not be brought in the context of a habeas petition, the magistrate judge found that Hango's concern regarding the coronavirus amounted to more than a conditions of confinement claim, but constituted a substantive due process challenge to his continued confinement in the face of the pandemic. (*Id*. at 537–38.)

4

transportation to Los Angeles." (*Id.* at 547.) On May 27, 2020, Hango filed a declaration detailing his plans to fly from Cleveland to Los Angeles, California where he intends to shelter-in-place with his wife and child in their home in Los Angeles. (Doc. No. 43 ["Release Plan"].)

In her objections to the R&R, respondent argues that the magistrate judge "did not accurately weigh the totality of the circumstances in this case, which show that [Hango] should remain detained." (Obj. at 567.) She also specifically objects to the magistrate judge's conclusions that Hango's request for release due to COVID-19 was properly brought in a habeas action, and that Hango has standing to raise such a claim. (*Id.* at 568-72.) Finally, she complains that Hango's Release Plan, including his plan to reside outside this Court's and the ICE Detroit Field Office's jurisdiction, is wholly insufficient to ensure his presence at future immigration proceedings. (*Id.* at 575.)

## II. STANDARD OF REVIEW

When a party timely objects to a magistrate judge's report and recommendation on a dispositive matter, the district court must conduct a de novo review of those portions of the report and recommendation to which a proper objection is made. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). After review, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

A general objection—"[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before"—is not considered a proper objection for the district court's de novo review. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* LR 72.3(b) (stating that any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections"). A general objection to an R&R has the same effect as a failure to object: a general objection waives *de novo* review by the district court and appellate review of the district court's decision. *Aldrich*, 327 F. Supp. 2d at 747–48. The respondent has lodged proper objections.

## III. DISCUSSION

Before the Court can reach the merits of respondent's objections, it must address one preliminary matter. The manner in which the issues in this case developed has resulted in an R&R that recommends dismissal of the underlying petition and simultaneously recommends a preliminary injunction untethered to any pending litigation. Because COVID-19 represented an entirely new justification for release—separate and apart from that supporting the original petition—the Court finds that that Hango's April 9, 2020 "Supplemental Arguments" should be construed as a request to amend both the habeas petition and the preliminary injunction motion. And because leave to plead a habeas petition is governed by Rule 15 of the Federal Rules of Civil Procedure and must be "freely" given "when justice so requires," the Court finds that an amendment to both filings is permissible. *See* Fed. R. Civ. P. 15(a)(2).

6

1.  **28 U.S.C. § 2241 is the Appropriate Vehicle**

In her first objection, respondent argues that the magistrate judge erred in his determination that Hango's request for release due to COVID-19 could be brought in the context of a habeas action. (Obj. at 568.) Section 2241 is "reserved for challenges to the execution of a sentence, such as a computation of parole or sentencing credits, and may not be used to challenge the validity of a conviction or the conditions of confinement." *Velasco v. Lamanna*, 16 F. App'x 311, 314 (6th Cir. 2001) (citing *Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir. 1979)); *see Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004) (Section "2241 is a vehicle not for challenging prison conditions, but for challenging matters concerning the execution of a sentence such as the computation of good-time credits"). "Constitutional claims that merely challenge the conditions of a person's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of [the habeas corpus] core[.]" *Nelson v. Campbell*, 541 U.S. 637, 643, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004). Respondent argues that Hango's COVID-19-based concerns amount to a "conditions of confinement" claim that must be brought as a civil rights lawsuit. (*Id*. at 569.)

In a recent decision, dated June 9, 2020, the Sixth Circuit ruled that a sub-class of medically vulnerable federal inmates with recognized risk factors for COVID-19 could bring a habeas action under § 2241 to challenge the conditions of their confinement in Elkton FCI. *See Wilson v. Williams*, No. 20-3447, at 10 (6th Cir. 2020) (recommended for publication). After acknowledging that confinement cases seeking relief in the form of improved conditions or transfer to another facility are not properly brought under § 2241, the court held that "where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should

be construed as challenging the fact or extent, rather than the conditions, of confinement." *Id*. at 9 (citations omitted). Because the medically vulnerable inmates at Elkton alleged that "no mitigation efforts" by the BOP or Elkton officials would be sufficient to protect them from the risk of serious illness or death from COVID-19, the Sixth Circuit held that § 2241 was the proper vehicle to redress the constitutional violations they alleged in their complaint. *Id*. at 10 (underscoring the fact that, [p]etitioners here . . . contend that the constitutional violations occurring at Elkton as a result of the pandemic can be remedied only by release").

In his amended petition, Hango does not suggest that only immediate release will be sufficient to protect him from the risk of serious illness or death from COVID-19, or otherwise argue that there are no remedial steps jail staff could take to keep him safe. But the Court is mindful that *pro se* pleadings must be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), and given that Hango repeatedly requests his immediate release as the appropriate form (and the only real form) of relief,[5] the Court will find that Hango's concerns about the coronavirus can be brought in § 2241. Respondent's first objection is overruled.[6]

---

[5] In his prayer for relief, Hango alternatively requests a hearing where respondent would be required to demonstrate that his continued detention was justified or "such further relief as the Court deems just and proper." (Doc. No. 35 at 241.) But the Court finds this language to be gratuitous, as the thrust of his pleading is his perceived need for immediate release. *Id*. ("Because Hango faces immediate health and death challenges, this court should also order his release pendent lite.")

[6] Additionally, the Court notes that district courts around the country have been even more inclined to permit challenges in habeas to concerns regarding COVID-19 for alien detainees, such as Hango, over federal prisoners because of the difference in status of these two groups. Civil detainees do not have the same statutory or regulatory avenues for relief as prisoners who can seek home confinement through the CARES Act or make a compassionate-release request to the BOP and motion to the sentencing court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See Wrag v. Ortiz*, No. 20-5496 (RMB), 2020 WL 2745247, at *16 (D.N.J. May 27, 2020). More importantly, "'[t]he Fifth Amendment prohibits punishment of pretrial detainees,'" entitling "'immigrant detainees to the same due process protections' as pretrial detainees[.]" *Albino-Martinez v. Adducci*, No. 2:20-cv-10893, 2020 WL 1872362, at *2 (E.D. Mich. Apr. 14, 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001); *E.D. v. Sharkey*, 928 F.3d 299, 306-07 (3d Cir. 2019)).

### 2. **Hango has Standing**

In her second objection, respondent argues that the magistrate judge erred in finding that Hango has standing to assert his COVID-19 concerns because he has not demonstrated an injury-in-fact that can be redressed by this Court. As to the former, respondent insists that any injury is only speculative because the alleged dangerous condition—COVID-19—has not been detected at Seneca County Jail and facility officials have taken a number of precautions to prevent the virus from entering and/or spreading throughout the facility. This, according to respondent, makes any injury speculative. (Obj. at 570–71) The Court disagrees. COVID-19 is a highly contagious virus that spreads quickly through closed environments, such as prisons and detentions centers. Courts have repeatedly held that the highly contagious nature of this dangerous and potentially fatal virus is sufficient to establish an alleged injury that is concrete and legally particularized. *See Ousman D. v. Decker*, No. 20-2292 (JMV), 2020 WL 1847704, at *5 (D.N.J. Apr. 13, 2020) (finding standing "in light of [the petitioner's] request for emergent relief in the wake of a national health crisis") (citing cases); *Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775, at *7 (S.D. Fla. May 6, 2020) ("Although they may never contact COVID-19, the alleged injury is concrete enough to survive challenges to standing given the rapid spread and highly contagious nature of the virus.").

The same reasoning applies to the question of redressability. Respondent reiterates that there are currently no cases of COVID-19 at Hango's facility and notes that there is no dispute that Hango is receiving appropriate medical care there. Given these circumstances, respondent argues that releasing Hango into the community—where he will board a plane for California—puts him at an equal or greater risk of contracting the virus outside his current environment. (Obj.

9

at 571–72.) But courts have consistently held that the specific dangers that COVID-19 poses in the custodial environment satisfy the redressability prong of the threshold standing requirement. *See Matos*, 2020 WL 2298775, at *7 (relying on CDC guidance finding that the inherent design and operation of prisons and detention centers promotes the spread of COVID-19 sufficient to satisfy redressability prong). Because Hango would have more freedom outside the custodial setting to protect himself from the transmission of the virus through social distancing and self-quarantining, the Court finds redressability is satisfied. *Id*.

For these reasons, the Court finds that the magistrate judge properly determined that Hango has standing to assert a claim as to COVID-19. Respondent's second objection, therefore, is overruled.

3. **Hango cannot Establish Entitlement to Immediate Release**

In her third objection, respondent argues that the magistrate judge erred in his balancing of the relevant preliminary injunction factors—likelihood of success on the merits, whether the movant will suffer irreparable harm without the injunctive relief, whether the injunction will cause substantial harm to others, and whether the public interest is served by the injunction—in determining that the totality of the circumstances favored the granting of preliminary injunctive relief. *See Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529, 540 (6th Cir. 2017). Because the Court finds that the facts and circumstances, as viewed through the lens of recent Sixth Circuit authority, do not warrant a grant of preliminary injunctive relief, the Court sustains this objection.

The parties do not dispute that the magistrate judge identified the appropriate standard for Hango's substantive due process claim. To establish whether conditions of confinement violate

10

the Fifth Amendment Due Process Clause, a district court must determine whether those conditions amount to punishment of the detainee. *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "[W]hether a condition of … detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004). But while the Fifth Amendment provides the basis for a civil detainee's due process claim, *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983), "claims relating to health concerns by detainees are analyzed using an Eighth-Amendment, deliberate-indifference framework." *Toma v. Adducci*, No. 20-11071, 2020 WL 2832255, at *4 (E.D. Mich. May 31, 2020) (citing *Watkins*, 273 F.3d at 686–86).

"That framework calls for proof that detention officials were deliberately indifferent to a substantial risk of harm[,]" and has both an objective and subjective component. *Toma*, 2020 WL 2832255, at *4 (citing *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To satisfy the objective prong, the detainee must demonstrate that the constitutional deprivation was "objectively, 'sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834); *see also Wilson, supra* at 12 (Under the objective prong, "an inmate must show 'that he is incarcerated under conditions posing a substantial risk of serious harm.'") (quoting *Farmer*, 511 U.S. at 834). "To succeed on the subjective prong," the detainee "must show that 'the prison authorities' current attitude and conduct' amounted to deliberate indifference." *Tomo*, 2020 WL 2832255, at *4 (quoting *Farmer, supra*); *see Wilson*, *supra* at 13 ("Turning to the subjective prong, the question is whether petitioners have demonstrated that the BOP's response to the COVID-19 pandemic has been deliberately indifferent to this serious risk of harm.")

In *Wilson*, the Sixth Circuit found that the medically-vulnerable inmates at Elkton had "easily satisfied" the objective prong due to the highly infectious nature of the virus and the substantial risk of serious harm or death associated with COVID-19. Because of the reality of institutional living—"which places inmates within feet of each other"—the court found that the medically-vulnerable inmates, who had established risk factors making them especially susceptible to serious illness from COVID-19, had established that they were "'incarcerated under conditions posing a substantial risk of serious harm.'" *Wilson*, supra at 13 (quoting *Farmer*, 511 U.S. at 834.)

Nevertheless, the court in *Wilson* found that the petitioners were unlikely to satisfy the subjective prong of the deliberate indifference test because the BOP had "responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton." *Id*. The court observed that, in response to the known risk, the BOP "implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton." *Id*. This multi-faceted plan involved measures to screen for the virus, isolate inmates known to have the virus, limit movement of inmates to reduce the spread within the facility, testing in accordance with CDC guidance, cleaning and disinfecting common areas, and making personal protective equipment ("PPE") available to inmates and staff. *Id*. at 14. While the court observed that these measures had not been entirely successful in averting the risk associated with COVID-19, it found that they represented a reasonable response to the serious health risk posed by the virus. *Id*.

Similarly, here, respondent noted in her merits brief, and in her objections, that ICE has and continues to take "aggressive steps to mitigate [the] risk [posed by COVID-19] at all of its facilities." (Doc. No. 36 at 268; Obj. at 567.) These precautions, implemented at Seneca County

12

Jail and other ICE facilities, have included enhanced "requirements for communications, staffing, hygiene and personal protective equipment supplies, hygiene and cleaning practices, intake screenings, visitation limitations, transfer limitations, and response planning if a COVID-19 case arises. (*Id*. at 271, citing Doc. No. 36-2 (Declaration of Ryan M. Overton ["Overton Decl."]) ¶¶ 8–19.) Additionally, the Seneca County Jail, where Hango is detained, has suspended in person social visitation, facility tours and non-essential motion; is screening all staff and individuals when they enter the facility, including taking body temperatures; is screening all intakes for travel and medical histories; and has identified housing units for the quarantine of patients with suspected or known cases of the virus, should such cases present in the future. (*Id*. ¶¶ 21–23.) Moreover, ICE is actively reviewing its detained population to determine whether it is appropriate to remove any high risk detainees from custody. (*Id*. ¶ 24.) In fact, Hango concedes that other alien detainees have been recently released from the Seneca County Jail. (Doc. No. 47 at 588.) These measures have proved entirely successful, to date, as the virus has now been present in this country for many months and Seneca County Jail has yet to register its first confirmed case.

As evidenced by their response to the current health crisis, there is no question that respondent and ICE are aware of the risks associated with the current world-wide health crisis. Much has been written by this and other courts over the past several months about the serious health risks associated with COVID-19, especially for those with preexisting conditions or circumstances that leave them particularly vulnerable to serious illness should they contract the virus. Moreover, respondent does not offer any serious opposition to the notion that Hango "suffers from medical conditions that may place him at higher risk should he contract COVID-

13

19." (*See* Obj. at 566.) The Court, therefore, finds that Hango satisfies the objective prong of the deliberate indifference standard.

But Hango failed in his amended pleading to identify any deficient conditions at the Seneca County Jail or otherwise identify any acts or omissions by facility officials that would demonstrate that they were deliberately indifferent to the serious risk Hango faces because of the virus. In fact, his amended motion focused entirely on the contagious nature of COVID-19, the potential for transmission in custodial settings, and his own risk factors. And in his response, he mentions only the dormitory style living arrangements at Seneca County Jail that do not easily lend themselves to social distancing. (Res. at 611.) But the fact remains that respondent's response to the dangers posed by COVID-19 has been swift, thorough, and thoughtful. The measures respondent, ICE, and officials at the jail have taken—which have been entirely effective in blocking the spread of the virus to the facility—represent a reasonable response to the serious risk Hango faces with respect to COVID-19 and render it highly unlikely that Hango could ever satisfy the subjective prong of the deliberate indifference standard. *See, e.g., Toma*, 2020 WL 2832255, at *6 (petitioner who offered "only conclusory arguments based on the contagious nature of COVID-19 and the potential to spread in detention facilities" failed to demonstrate a likelihood of success on her deliberate indifference claim); *Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1518861, at *5 (S.D. Tex. Mar. 27, 2020) (noting that petitioner could not demonstrate a likelihood of success on the merits where the petitioner had received continuous medical care in his facility and officials had implemented preventive

measure to reduce the risk of petitioner contracting COVID-19);[7] *see also Matos*, 2020 WL 2298775, at *10 (alienee detainees were unlikely to succeed on deliberate indifference claim where respondent's efforts to stem the spread of COVID-19, though "not perfect," remedied "what is practically possible and constitutionally required without overhauling the entire nature of confinement"). Because Hango has failed to demonstrate a substantial likelihood of success on the merits, this first prong weighs strongly in favor of denying preliminary injunctive relief.[8] *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.")

Further, the Court finds that the government's and the public's legitimate interest in detaining Hango is significant and outweighs his concerns over the conditions of his confinement. "There is always a public interest in prompt execution of removal orders[,]" *Niken v. Holder*, 556 U.S. 418, 436, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009), and "the public interest in enforcement of immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (collecting cases); *see United States v. Martinez-Fuerte*, 428

---

[7] In *Sacal-Micha*, the petitioner relied entirely on his age, underlying medical conditions, and general information about the highly contagious nature of the coronavirus to support his deliberate indifference claim. Rejecting this showing, the court observed that, "accepting [petitioner's] reasoning would logically require the release of all individuals currently detained who are elderly or suffer from certain underlying medical conditions. The law does not require such a generalized result." *Id*. at *5.

[8] In his response, Hango argues, for the first time, that he has not received "proper treatment" at the Seneca County Jail for his underlying medical conditions. Specifically, he claims that he has not received by-weekly testing of his blood thinner medication and periodic cholesterol testing. He also complains that he has yet to receive a Heart Nuclear Injection. According to Hango, these measures are vital to maintaining his health. (Resp. at 612.) Of course, this information was not presented to the magistrate judge and need not be considered by this Court. More to the point, a detainee's right to adequate medical care does not entitle the detainee to the "best care possible," or to his preferred course of treatment. *See Rhinehart v. Scutt*, 894 F.3d 721, 750 (6th Cir. 2018). Moreover, a disagreement over the proper course of medical treatment does not rise to the level of deliberate indifference. *Id*. at 740 (citing cases). Hango has failed to demonstrate a deliberate indifference on the part of jail staff to attend to his medical needs.

U.S. 543, 556, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976) (noting the "substantiality of the public interest" in enforcing immigration laws). Further, "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings . . . established, and permits and prolongs a continuing violation of United States law." *Niken*, 556 U.S. at 436 (quotation marks and citation omitted). The Court, therefore, finds that respondent and the public have a substantial interest in enforcing the removal order against Hango.[9]

Hango did not timely object to the magistrate judge's determination that he was lawfully detained in 2019. While he now complains in his response to respondent's objections that he did not obstruct removal, the Court finds these claims, even if they had been raised timely, belied by the record. (*See* Doc. No. 36-1 (April 17, 2020 Declaration of Aaron Husband); Doc. No. 36-1 (Notice of Failure to Comply) at 291.) The Court, therefore, adopts the portion of the R&R finding the original detention prior to the COVID-19 outbreak was proper, under 8 U.S.C. § 1231(a)(1)(C), due to Hango's own proactive measures to defeat prior attempts at deportation. Accordingly, the only remaining issue deals with his continued detention in light of the pandemic. But Hango has failed to demonstrate that he has a substantial likelihood of success on his Fifth Amendment claim. Because he has failed to make such a showing, the respondent's and the public's interest in enforcing immigration laws convincingly tips the scale against ordering preliminary injunctive relief. *See, e.g., Albino-Martinez*, 2020 WL 1872362, at *5 (detainees who violated immigration laws and failed to demonstrate a likely success on the merits of their

---

[9] In discounting respondent's interest in enforcing immigration laws, the magistrate judge observed that it was not clear whether ICE could effectuate Hango's removal at this time, as "international travel has been significantly disrupted by the global pandemic." (R&R at 546.) In her objections, respondent notes that "ICE has been able to remove detainees to the continent of Africa via charter flight, and would have removed [p]etitioner on such a flight if they had secured a travel document." (Obj. at 574, citing Doc. No. 45-1 (June 4, 2020 Declaration of Aaron Husband) ¶¶ 4–5.)

COVID-19 conditions of confinement claims were not entitled to injunctive relief); *Matos*, 2020 WL 2298775, at *10 (petitioners who each had a final order of removal, and whose removal was imminent, were not entitled to injunctive relief due to COVID-19).

Additionally, the Court agrees with respondent that Hango poses a significant flight risk. Given Hango's considerable history of obstructing his lawful removal from this county, the Court has no confidence that he would voluntarily return to this jurisdiction if he were released and permitted to reside with family well outside the jurisdiction of this Court and the ICE Detroit Field Office. The record reflects that he has resisted deportation efforts to deport him at every turn, and that he has most recently refused, without legal justification, to complete the necessary paperwork to renew his travel papers. While the Court finds that release is not warranted, the Court would also sustain respondent's objections to Hango's stated Release Plan as wholly insufficient to ensure his appearance at future immigration proceedings.[10]

### IV. CONCLUSION

For the foregoing reasons, the Court accepts the R&R to the extent that it finds that petitioner's ICE detention pending removal is warranted under governing immigration laws and rejects the portion of the R&R recommending Hango's immediate release. Accordingly, the Court dismisses the habeas petition as original pled, and dismisses without prejudice Hango's petition to the extent it was amended to include a claim for immediate release due to COVID-19.

---

[10] The Court would further find that the Release Plan—which contemplates Hango flying on a commercial flight from Cleveland to Los Angeles immediately after being released from ICE custody—fails to adequately protect the public from the risk of potential exposure to the coronavirus. While Hango notes that he purchased a ticket in first class to aid social distancing, plans to wear a mask, and will rely on improved air filtration systems in airplanes to reduce the risk to him and other passengers, the CDC warns that air travel also requires passengers to spend time in crowded security lines and airport terminals, which can bring one into contact with other people and frequently touched surfaces. https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html (last visited June 16, 2020).

The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: June 17, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**