# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW HANGO, | ) | CASE NO. 1:19-cv-606 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| KIRSTJEN NIELSEN, et al. | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

This matter is before the Court on the motion of petitioner Andrew Hango ("petitioner" or "Hango") for reconsideration of the June 17, 2020 Memorandum Opinion and Order denying his motion for a preliminary injunction and dismissing his habeas petition. (Doc. No. 54 (Motion for Reconsideration ["Mot."]); Doc. No. 56 (Petitioner's Addendum to Motion for Reconsideration ["Addendum"])); *see* Doc. No. 51 (Memorandum Opinion and Order ["MOO"]); Doc. No. 52 (Judgment Entry); *see also* Doc. No. 32 (Motion for a Preliminary Injunction); Doc. No. 35 (Supplement to Motion for a Preliminary Injunction).) Respondent Kirstjen Nielsen ("respondent") opposes the motion (Doc. No. 61 ["Opp'n"]). Hango filed a

reply (Doc. No. 63 ["Reply"]), and respondent filed a sur-reply. (Doc. No. 67 ["Sur-Reply"].)[1]

On July 14, 2020, petitioner filed a notice of appeal from the same opinion and order of the Court denying him a preliminary injunction and dismissing his petition. (Doc. No. 55 ["Notice"].) Ordinarily, the filing of a notice of appeal with the district court clerk divests the district court of jurisdiction to act in matters involving the merits of the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *see United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984). But the Sixth Circuit has stayed its appeal pending this Court's resolution of petitioner's motion for reconsideration. (Doc. No. 58.) Accordingly, the Court finds that it has jurisdiction to consider the present motion.

## I. BACKGROUND

Both the magistrate judge and this Court have written extensively on the factual and procedural circumstances surrounding Hango's habeas petition, and the Court assumes familiarity with these prior rulings and orders. For purposes of framing Hango's motion, it is sufficient to note that Hango has been the subject of removal proceedings since 2002. Most recently, Hango was taken into custody on March 6, 2019 by U.S. Immigration and Customs

---

[1] At Hango's request, the Court granted leave until August 24, 2020 to file a reply. (Non-doc. Order, 8-7-2020.) On August 25, 2020, Hango filed his reply. (*See* Doc. No. 63.) The Court permitted the untimely filing but, because it introduced new arguments, the Court granted respondent leave to file a sur-reply. (Non-doc. Order, 8-28-2020.) Notwithstanding the fact that the Court cautioned that, with the filing of respondent's sur-reply, the Court would consider the motion fully briefed, Hango filed a series of documents. (*See* Doc. No. 64 (Second Addendum ["Addendum II"]); Doc. No. 65 (Objections to the Court's Order ["Obj."]); Doc. No. 66 (Updated Reply [Reply II"]); Doc. No. 68 (Notification).) In an abundance of caution, the Court has considered these unauthorized filings, though the Court has determined that the filings do not change its analysis of the pending motion.

Enforcement ("ICE") for purposes of deportation. He is detained by ICE at the Seneca County Jail in Tiffin, Ohio, pursuant to 8 U.S.C. § 1231(a)(6).

In the present habeas petition, filed March 19, 2019, Hango challenged his ICE detention pending removal, claiming that he had been taken into custody by ICE without due process. On February 21, 2020, Hango filed a motion for a preliminary injunction seeking release pending resolution of his underlying petition. On April 9, 2020, Hango amended his motion, claiming that ICE is unlawfully subjecting him to a heightened risk of serious complications should he contract COVID-19, given his history of several serious medical conditions.

In a report and recommendation ("R&R") issued May 21, 2020, the magistrate judge recommended that the Court dismiss the habeas petition and order Hango's immediate release from ICE custody. The magistrate judge found that ICE's decision to take Hango into custody "when [his] removal was imminent [was] reasonable given that Hango had previously been given the opportunity to self-deport, and had not complied with that order." (R&R at 551.) Notwithstanding his finding that the underlying petition lacked merit, the magistrate judge recommended that Hango be released due to the circumstances surrounding the COVID-19 pandemic and Hango's particular risk factors associated with the virus. (*Id*. at 542.)

Respondent filed objections to the portion of the R&R recommending Hango's immediate release due to COVID-19. Hango did not file timely objections to any part of the R&R but filed a response to the portion of respondent's objections challenging the recommendation that he be immediately released due to COVID-19. Upon a *de novo* determination of the magistrate judge's R&R, the Court granted in part, and denied in part, respondent's objections. While the Court found that a habeas petition, pursuant to 28 U.S.C. §

3

2241, was the appropriate vehicle for addressing Hango's claims, and further determined that Hango had standing to raise his concerns relative to his continued detention during the pandemic, the Court concluded that Hango was unlikely to prevail on the merits of his § 2241 petition, and that the government's and the public's legitimate interest in detaining Hango was significant and outweighed his concerns over the conditions of his confinement. (MOO at 632–39.)

As to the former, the Court found that the record demonstrated that the BOP's response to the pandemic was thoughtful, thorough, and immediate, and—with respect to the facility where Hango is detained—entirely effective at slowing and/or stopping the spread of the virus, as the Seneca County Jail had yet to register its first positive case of COVID-19. (*Id.* at 636–37.) Because Hango failed to allege any deficient conditions at his facility or otherwise identify any acts or omissions that showed deliberate indifference on the part of prison officials, Hango was unlikely to prevail in his request for immediate release. (*Id.*) As to the latter, the Court reasoned that respondent and the public had a substantial interest in enforcing the removal order against Hango. (*Id.* at 637–38.) In reaching this conclusion, the Court found that continued detention was necessary, in part, because Hango posed a significant flight risk, and because his removal was imminent. (*Id.* at 639, 639 n.9.)

It is to this last point that Hango takes exception. In his motion for reconsideration, Hango claimed that his removal was no longer reasonably foreseeable because ICE counsel agreed to a remand of his immigration proceedings from the Board of Immigration Appeals ("BIA") to the Immigration Court. (Mot. at 654; Opp'n at 744.) Specifically:

> On February 12, 2020, an [Immigration Judge ("IJ")] denied Hango's motion to reopen removal proceedings. Hango appealed that decision to the Board of Immigration Appeals [BIA] arguing, in part, that the IJ was not impartial because he previously represented [U.S. Department of Homeland Security ("DHS")] in

4

> his removal proceedings. In a reply brief, DHS, ICE's Office of the Principal Legal Advisor informed the Board that it did not oppose a remand for the IJ to address the recusal in the first instance. On July 8, 2020, the Board remanded the record so that the IJ may address whether recusal is appropriate or, if necessary, so that the case may be reassigned to another IJ to adjudicate the motion to reopen.

(Doc. No. 61-1 (August 5, 2020 Declaration of Aaron Husband ["Husband Decl. II"]) ¶ 4.)[2] Prior to this determination, ICE had scheduled a charter flight for Hango on August 11, 2020 to remove him to Tanzania. The removal did not occur on that date due to the temporary remand. (*Id*. ¶ 5.) Hango maintained that the remand constitutes "newly discovered evidence" that justifies reconsideration. (Mot. at 654.) He also claimed that "newly discovered evidence" in the form of a district court decision from California warranted "a second look" by this Court of its decision to deny him immediate release. (*Id*. at 655, citing *Fraihat v. U.S. Immigration & Customs Enforcement*, 445 F. Supp. 3d 709 (C.D. Cal. 2020).)

The proceedings in the Immigration Court have progressed since Hango first sought reconsideration. On August 11, 2020, the original IJ, Mark J. Jebson, entered an order recusing himself from further participation in the proceedings relative to Hango's seventh motion to reopen. (Doc. No. 63-1 (Order) at 764.) In response to Hango's request for bond, IJ Jebson ordered Hango released on a $2,500 bond. (*Id*. at 766.) ICE appealed IJ Jebson's bond determination to the BIA (Doc. No. 67-1 at 803), and the BIA granted a stay of the bond order pending appeal. (Doc. No. 67-2 at 805.)[3] On September 14, 2020, Jennifer M. Gorland, the IJ

---

[2] The most recent motion to reopen represents Hango's seventh motion to reopen. (Doc. No. 36-1 (Aaron Husband Declaration ["Husband Decl."]) ¶ 6.)

[3] The stay issued by the BIA is not an "automatic stay" as Hango suggests in his reply. Accordingly, his argument that the Court should declare the automatic stay provision unconstitutional finds no application herein. (*See* Reply at 755–59.)

5

appointed after IJ Jebson recused, denied Hango's seventh motion to reopen.[4] (Doc. No. 67-3 at 807–812.)

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for reconsideration of a court's decisions and orders; however, a motion to reconsider may be treated as a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e). *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617–18 (6th Cir. 2002). A Rule 59(e) motion is designed only to "correct manifest errors of law or fact or to present newly discovered evidence." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). It is not a vehicle to reargue the case, or present arguments that could have and should have been raised in connection with an earlier motion. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). That is, Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided. *See Dana Corp. v. United States*, 746 F. Supp. 482, 488–89 (N.D. Ohio 1991).

Rule 59(e) motions are "extraordinary and sparingly granted." *Marshall v. Johnson*, No. 3:07-cv-171, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007)). Accordingly, a Rule 59(e) motion to alter or amend may only be made for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or

---

[4] In her decision, IJ Gorland chronicled Hango's efforts over the years to forestall his removal. (*See* Doc. No. 67-3 at 808 [noting that "Hango has continuously pursued reopening, collateral attacks on his removal order, petitions against his detention, and civil lawsuits in every forum that would hear him–effectively delaying his removal"].). With respect to Hango's seventh motion to reopen, IJ Gorland ruled that Hango failed to demonstrate the existence of a material change in country conditions. (*Id*. at 809.) Specifically, she found that correspondence between Hango and the Tanzanian Ambassador failed to show that Hango would be charged with violations of the obscene-speech provisions of the Tanzania Penal Code simply because Hango used language in his letters that the ambassador acknowledged was abusive. (*Id*. at 809–11.) Further ruling, the IJ held that even if she had found the existence of a material change in country conditions, she would have exercised her discretion to deny the motion because it "appears to be another in a long line of actions taken [by Hango] to prolong the enforcement of his 2002 removal order." (*Id*. at 811.)

(3) it is necessary to correct a clear error of law or to prevent manifest injustice. *See Schlaud v. Snyder*, 785 F.3d 1119, 1124 (6th Cir. 2015); *see, e.g., Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). The proponent of the Rule 59(e) motion bears the burden of proof, and the decision to grant relief under the rule is within the sound discretion of the court. *See Engler*, 146 F.3d at 374 (citing *Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 474 (6th Cir. 1998)).

### III. DISCUSSION

Much of Hango's motion is merely an attempt to re-litigate arguments he unsuccessfully made before the magistrate judge and this Court. He contests the Court's review of the record and the legal conclusions drawn therefrom. He reasserts his arguments relating to the serious nature of the novel coronavirus, the general conditions in the federal prison system, and the inherent challenges in containing the virus in a custodial setting. He also criticizes, once again, the determination of the magistrate judge and this Court that he has resisted his removal on numerous occasions.

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *Database Am Inc. v. Bellsouth Adver. & Publ'g*, 825 F. Supp. 1216, 1219–20 (D.N.J. 1993) (citation omitted). A motion for reconsideration, as stated above, is to be used to correct errors of law, or fact, or to present newly discovered evidence. To the extent that Hango simply rehashes arguments raised in prior briefings, his motion is DENIED.

*1. Intervening Change in Controlling Law*

Two arguments merit separate consideration. Hango points to the decision in *Fraihat*, which he claims was "pasted all over the jail to assist detainees such as Hango who are high risk detainees obtain relief from detention." (Mot. at 668.) In *Fraihat*, a number of ICE detainees around the country filed a complaint for declaratory and injunctive relief in the Central District of California, asserting *Bivens* claims relating to their detainment. The district court certified a subclass of all ICE detainees throughout the country whose disabilities placed them at a heightened risk of serve illness and death should they contract the COVID-19 virus. As part of its grant of class-wide relief, the district court required ICE to "make timely custody determinations for detainees" in the subclass.**5**

This unreported case out of the Central District of California does not constitute an intervening change in controlling law, as it was released before this Court issued its decision and, in any event, this Court is only bound by decisions from the United Supreme Court and the United States Court of Appeals for the Sixth Circuit. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (An intervening change in the law must be *controlling* to warrant reconsideration under Rule 59(e).) Further, given that the members of the class in *Fraihat* were not detained at the Seneca County Jail, or held under similar circumstances, the decision offers little, if any, persuasive authority. *See also United States v.*

---

[5] To the extent Hango suggests that "he should be released under the class-wide injunction of *Fraihat*," (*see* Mot. at 669), he must seek relief in that court. "A District Court has broad powers to enforce its injunctions and judgments, but that power is exercised at the court's discretion and within the limits of the court's jurisdiction…[a] District Court's jurisdiction does not extend to the injunctions or orders of [other] Federal districts or state decisions." *See Old Tyme Remedies, LLC v. Amish Origins, LLC*, No. 5:12-cv-3044, 2015 WL 1472056, at *3 (N.D. Ohio Mar. 31, 2015) (case citations omitted); *but see Zhiriakov v. Barr*, No. 20-2141, 2020 WL 3960442, at *3 (D. Kan. July 13, 2020) (noting that § 2241 petitioner had previously been denied release in *Fraihat* class action because he was subject to a final order of removal and was within the 90-day removal period).

*Johnson*, No. 16-cr-20172, 2020 WL 3989530, at *1 (E.D. Mich. July 15, 2020) ("A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant.") (quotation marks and citations omitted).

As the Court previously determined, prison officials responsible for Hango's detention implemented comprehensive strategies to prevent or mitigate the spread of COVID-19 within the Seneca County Jail, and their efforts have been entirely successful in keeping the virus out of the facility. (*See* Husband Decl. II ¶ 6, noting that, as of August 4, 2020, there "continues to be zero suspected or confirmed cases of COVID-19 at the Seneca County Jail".) Even Hango admits that "these measures are certainly commendable[.]" (Mot at 662, quotation marks and citation omitted.) Though he complains that more could be done, such as incorporating better social distancing measures and implementing protocols to identify asymptomatic inmates that may nevertheless spread the virus, the fact remains that the record does not support a finding that respondent or the BOP have been deliberately indifferent to the serious risks Hango faces with respect to COVID-19. (*See id*. at 662–63.) *See Wilson v. Williams*, 961 F.3d 829, 839–40 (6th Cir. 2020) (in evaluating due process claim by inmates, the court is guided by the Eighth Amendment deliberate indifference inquiry, which requires proof that detention officials were deliberately indifferent to a substantial risk of harm); *see, e.g., Toma v. Adducci,* No. 20-11071, 2020 WL 2832255, at *4 (E.D. Mich. May 31, 2020) (applying deliberate indifference framework to detainee's due process claim).

    2.    *Newly Discovered Evidence*

In his motion for reconsideration, Hango also contended that he was entitled to release

from custody because of the length and indefiniteness of his ongoing detention following the BIA's decision to remand his latest motion to reopen to the IJ. (Mot. at 654–55, 659) As set forth above, the original IJ has since recused and ordered bond, the BIA has stayed the bond order, and the newly appointed IJ has denied the motion to reopen. Thus, as of the date of this memorandum opinion, Hango's removal order remains administratively final and enforceable, and there is no impediment to his removal.[6]

To the extent the Immigration Court proceedings can be characterized as "newly discovered evidence," they do not entitle Hango to relief. The authority to detain aliens after the entry of a final order of removal is set forth in § 241(a) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). In *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), the United States Supreme Court held that § 241(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." The Supreme Court stated that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id*. at 699.

The *Zadvydas* Court designated six months as a presumptively reasonable period of post-order detention. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the

---

[6] Of course, the filing of a motion to reopen does not affect the finality of an administratively final order of removal. *See Dela Cruz v. Mukasey*, 532 F.3d 946, 948 (9th Cir. 2008) (the finality of a removal order "'is not affected by the subsequent filing of a motion to reconsider'" or reopen) (quoting *Stone v. INS*, 514 U.S. 386, 405–06, 115 S. Ct. 1537, 131 L. Ed. 2d 465 (1995)); *Belov v. U.S. Attorney Gen.*, 397 F. App'x 530, 532 n.3 (11th Cir. 2010) (filing of a motion to reopen does not affect finality of a removal order). It is only when a motion to reopen is *granted* that a final removal order is vacated. *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("the grant[ing] of a motion to reopen vacates the previous order of deportation or removal….").

Government must respond with evidence sufficient to rebut that showing." *Id.* at 701; *see Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020).

Here, Hango has been detained longer than the presumptively reasonable six-month period described in *Zadvydas*. Respondent has come forward with evidence demonstrating that the only thing that prevented Hango from being removed on August 11, 2020 was the uncertainty surrounding the remand of his most recent motion to reopen. Now that the motion has, once again, been denied, there is nothing preventing Hango's removal in the foreseeable future. "While [Hango] is, of course, free to file any lawful motion he wishes, he cannot cause a delay [and] then accuse ICE of unconstitutional detention when that delay turns out to be longer than he expected." *See Zymak v. Adducci*, No. 20-11786, 2020 WL 5017534, at *1 (E.D. Mich. Aug. 25, 2020) (denying similar challenge to continued detention due to pending motion to reopen immigration proceedings); *see, e.g., Mulla v. Adduci*, 178 F. Supp. 3d 573, 577 (E.D. Mich. 2016) ("[M]uch of the delay has been attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the deportation order. He is entitled to follow that course, certainly, but his efforts to employ that delay to establish that his detention is 'indefinite' is unconvincing."); *Mrina v. Holder*, No. 3:08-cv-2182, 2009 WL 2921296, at *2 (N.D. Tex. May 11, 2009) (rejecting challenge under *Zadvydas* to continued detention because alien detainee had "failed to show that Tanzania will not accept him once his immigration proceedings are no longer pending"); *see also Escobar v. Lynch*, No. 16-cv-683, 2017 WL 2369374, at *4 (D. Haw. May 31, 2017) (noting that petitioner's "collateral challenge to try to reopen the removal proceedings does not mean that his removal order is not final").

Unlike the petitioner in *Zadvydas* whose detention was "indefinite" and "potentially

11

permanent" because the government could not find a country that would accept him, there is a definite endpoint to Hango's detention: when ICE makes new travel plans to remove Hango now that his latest motion to reopen has been denied. *Zadvydas*, 533 U.S. at 691. Respondent has come forward with evidence that ICE had already arranged for Hango's removal via a commercial flight to Tanzania when the decision to remand was made. (Husband Decl. II ¶ 5.) *See Virani v. Huron*, No. 19-cv-499, 2020 WL 1333172, at *6 (W.D. Tex. Mar. 23, 2020) (finding removal reasonably foreseeable, despite pending collateral appeal, where government had previously obtained travel documents, noting that "[t]here is no existing impediment to the [g]overnment obtaining additional travel documents and proceeding with removal other than [p]etitioner's litigation activity"). Now that there is a decision on the remanded motion to reopen, nothing is impeding Hango's removal.

Thus, under governing Supreme Court precedent, Hango has not provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, Hango is not entitled to reconsideration based on "newly discovered evidence."

## IV. CONCLUSION

For all the foregoing reasons, Hango's motion for reconsideration (Doc. No. 54) is DENIED. Further, the Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: September 22, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**